UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**MOCTEZUMA RIVERA CASTELAN, on behalf
of himself and others similarly situated,**

 *Plaintiff,*

**v.**             **Case No. 5:23-CV-1394-JKP-RBF**

**GARY VILLARREAL; KINNEY COUNTY;
RONNY TAYLOR; and RECANA SOLUTIONS,
LLC,**

 *Defendants.*

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions: (1) Defendant Ronny Taylor's Motion to Dismiss (ECF No. 59); (2) Recana Solutions, LLC's ("Recana") Motion to Dismiss (ECF No. 60); and (3) Defendant Kinney County's ("the County") Motion to Dismiss (ECF No. 62). Movants seek dismissal of Plaintiff's Second Amended Complaint ("SAC") (ECF No. 56) through Fed. R. Civ. P. 12(b)(6). Plaintiff has responded to each motion, *see* ECF Nos. 64–66, and each Movant has filed a reply to the respective response, *see* ECF Nos. 67, 68, and 70. Plaintiff thereafter also filed a Notice of Supplemental Authority (ECF No. 71) to provide a decision from the Austin Division of the Western District of Texas.

## I. BACKGROUND[1]

This is a federal civil rights case stemming from an October 6, 2021 arrest of Plaintiff "in Kinney County, Texas, for Criminal Trespass in a Disaster Area . . . pursuant to Operation Lone Star (OLS), Texas's wideranging campaign to arrest large numbers of migrants at the Texas–Mexico border." SAC ¶¶ 1, 41. Plaintiff brings claims on his own behalf and on behalf of two subclasses of individuals who were arrested as part of OLS. *See id.* ¶ 89.

---

[1] The operative pleading, as supplemented by matters properly considered by the Court, provides the background facts, which the Court views in the light most favorable to Plaintiff as required under Fed. R. Civ. P. 12(b)(6).

Shortly after his arrest, Plaintiff was taken to the Val Verde Processing Center ("the Center") where he appeared before a magistrate for arraignment, "made clear that he could not afford a lawyer," and it was "determined that he was indigent and was entitled to appointment of counsel." *Id.* ¶ 42. Because he could not afford bail for his release, Plaintiff "was taken to Briscoe to be further detained under the authority of Kinney County."[2] *Id.* ¶ 43.

No one sent paperwork related to Plaintiff's appointment of counsel. *Id.* ¶ 45. Although he had yet to be formally charged with any crime as of November 5, 2021, thirty days after his arrest and arraignment, Plaintiff remained detained in Briscoe without appointment of counsel. *Id.* ¶ 46. Because Plaintiff was "accused of a misdemeanor punishable by a sentence of imprisonment in jail for more than 180 days," Section 1(2) of Article 17.151 of the Texas Code of Criminal Procedure mandated that, within thirty "days from the commencement of his detention," Plaintiff "be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is be detained." However, based on Executive Order GA 13 (hereinafter EO 13) issued March 29, 2020, Governor Abbott suspended Article 17.151 "to the extent necessary to prevent any person's automatic release on personal bond because the State is not ready for trial." *See* ECF No. 59-4 at 3.

The Lubbock Private Defenders' Office ("DO") frequently contacted the Center for lists of processed detainees "because the Center did not reliably transfer their paperwork as required for the [DO] to appoint counsel." SAC ¶ 50. The policies and practices of the Center prevented the DO from even determining who needed appointed counsel. *Id.* Ultimately, the DO "realized that, due to the Center's policies, practices, and deliberate indifference to its repeated failure to send necessary paperwork," it "would need to perform its own investigation to determine who was detained under Operation Lone Star and might qualify for appointed counsel." *Id.* ¶ 51.

---

[2] Briscoe refers to "Dolph Briscoe Unit," a state prison located in Dilley, Texas, which has been "repurposed to hold those arrested pursuant to Operation Lone Star." SAC ¶ 32.

On December 16, 2021, the DO requested Plaintiff's paperwork from Defendant Taylor along with missing paperwork for fifty other detainees. *Id.* After Taylor forwarded the request, Recana, inquired as to "what paperwork" the DO required. *Id.* ¶ 52. The DO "immediately responded" to that inquiry and the Center sent Plaintiff's paperwork on December 20, 2021. *Id.* ¶ 53.

Defendant Villarreal was appointed as Plaintiff's defense attorney on December 21, 2021, seventy-six days after his arrest and forty-six days past the date "Kinney County was required to release him on personal bond or a bond he could afford." *Id.* ¶¶ 54–55. Despite the appointment, Villarreal took no action on behalf of Plaintiff for the 171 days that he was appointed counsel before being removed from Plaintiff's case due to "deficient performance." *Id.* ¶¶ 58, 60. Plaintiff received a new attorney on June 9, 2022, and was released from custody five days later when the prosecutor declined to prosecute and suggested that he be immediately released. *Id.* ¶¶ 60–61.

Although Plaintiff was never formally charged with a crime, Kinney County detained him for 222 days after Tex. Code Crim. P. Art. 17.151 § 1(2) mandated either his release on a cashless bond or a bail reduction. *See id.* ¶¶ 47, 62. Despite that provision of Texas law, Plaintiff did not appear before any judge other than at his initial arraignment hearing. *See id.* ¶ 42. No one made any effort to inform him of his rights, bring him before a judge, or take any other action to end his detention. *Id.* ¶ 48.

Plaintiff alleges that Kinney County's policies and practices led to his unlawful detention. *Id.* ¶ 9. With respect to Defendant Taylor, Plaintiff further alleges that

> Taylor was hired by the Texas Division of Emergency Management to help design, administer, and operate the Val Verde Processing Center, including the processes involved at the Center for sending necessary paperwork to the Lubbock Private Defender's Office, which the entity tasked by state law with appointing attorneys in cases brought under Operation Lone Star. Taylor was the facility administrator of the Center from (approximately) July to November 2021. From approximately September 2021 through the end of November 2021, he operated the Center in conjunction with Defendant Recana Solutions, LLC. During these times, Taylor was responsible for formulating, implementing, and executing policies, customs, and

practices applicable to the Center. Taylor's responsibilities included ensuring that the necessary paperwork of individuals processed under the Operation Lone Star was sent to the Lubbock Private Defenders' Office. He was responsible for training and supervising Center's staff. He had the authority to design, implement, and change policies, customs, and practices. At all relevant times, Defendant Taylor acted under the color of state law. He is a resident of Porter, Texas. He is sued in his individual capacity.

*Id.* ¶ 10. And, as to Defendant Recana, Plaintiff alleges it

is a corporation organized and existing under the laws of the state of Texas, with its principal place of business in Dallas, Texas. Recana is a government contracting and staffing company. It operated the Val Verde Processing Center with Taylor from (approximately) September 2021 through November 2021 and independently thereafter. During these times, Defendant Recana was responsible for formulating, implementing, and executing policies, customs, and practices applicable to the Center, including sending necessary paperwork to the Lubbock Private Defenders' Office. Throughout its time administering the Center, Recana acted pursuant to a contract with the Texas Division of Emergency Management and under the color of state law.

*Id.* ¶ 11.

Pursuant to 42 U.S.C. § 1983, Plaintiff asserts two claims: (1) violation of Fourteenth Amendment due process rights by Kinney County (SAC ¶¶ 111–23); and (2) violation of Sixth Amendment right to counsel by Defendants Taylor and Recana (SAC ¶¶ 124–36). These two claims form the basis for his purported class action. *See* SAC ¶ 89. He also asserts a negligence claim against Recana under Texas law. *See id.* ¶¶ 137–43. In addition, he pursues a negligence/malpractice claim against Defendant Villarreal, *see id.* ¶¶ 102–10, which is not at issue in any motion before the Court. At this point, furthermore, the Court is only concerned about the claims Plaintiff pursues on his own behalf.

Each moving defendant seeks dismissal under Fed. R. Civ. P. 12(b)(6). The motions are ripe for ruling.

## II. APPLICABLE LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every

pleading that states a claim for relief must contain "a short and plain statement of the claim show-ing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the con-tents of the pleadings, including attachments thereto." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). When the operative pleading references a document, "and the parties do not dispute that it is properly before the court on th[e] motion to dismiss," the Court may consider the referenced document. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 252 n.2 (5th Cir. 2021) (per curiam).

Two defendants provide documents with their motions to dismiss. Defendant Taylor pro-vides Exhibits A (Emergency Order Regarding Indigent Defense and the Border Security State of Disaster issued by the Texas Supreme Court on August 30, 2021); B (Renewed Emergency Order Regarding Indigent Defense and the Border Security State of Disaster issued by the Texas Supreme Court on December 20, 2023); and C (EO 13 relating to detention in county and municipal jails during the COVID-19 disaster issued by Governor Greg Abbott on March 29, 2020). The County provides Exhibit 1 (a March 6, 2021 press release regarding Governor Abbott's launch of Opera-tion Lone Star); Exhibit 2 (the same EO 13 provided by Ex. C); and Exhibit 3 (correspondence showing compliance with this Court's Standing Order regarding Rule 12(b)(6) motions to dismiss). The Court may appropriately consider the exhibits from Taylor as well as Exhibits 1 and 2 from the County because they are appropriate for judicial notice. *See Norris v. Hearst Trust*, 500 F.3d

454, 461 n.9 (5th Cir. 2007); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Because Exhibit 3 from the County relates to procedural aspects rather than a basis for dismissal under Rule 12(b)(6), the Court will not consider it as pertaining to any basis for dismissal under Rule 12(b)(6). The Court may properly consider the other attached items without converting any motion to one for summary judgment.

When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted). "And despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) has the burden to show that dismissal is warranted." *C.M. v. United States*, 672 F. Supp. 3d 288, 353 (W.D. Tex. 2023).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Plaintiffs need not plead the legal basis for a claim, but they "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). And they satisfy that standard when they allege "simply, concisely, and directly events" that are sufficient to inform the defendant of the "factual basis" of their claim. *Id*.

Facts alleged by the plaintiff must "raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555.

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice. Thus, though [courts] generally take as true what a complaint alleges, [they] do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.

*Smith v. Heap*, 31 F. 4th 905, 910 (5th Cir. 2022) (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether the Court should permit that party to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Further, determining plausibility is a "context-specific task," that courts perform in light of their "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Additionally, asserted defenses may support dismissal under Rule 12(b)(6) when the operative pleading conclusively establishes the defense because all relevant facts are within the record and are uncontroverted, admitted, or otherwise conclusively established. *Pie Dev., LLC v. Pie Carrier Holdings, Inc.*, ___ F.4th ___, ___, No. 24-60155, 2025 WL 368721, at *2 (5th Cir. Feb. 3, 2025) (per curiam) (addressing res judicata defense); *C.M.*, 672 F. Supp. 3d at 354. And when a "motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)); *accord Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023); *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021). But to trigger "the qualified-immunity framework," the party asserting the defense "must 'satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority.'" *Sweetin v. City of Tex. City*, 48 F.4th 387, 392 (5th Cir. 2022)

(quoting *Cherry Knoll, LLC v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)).

Although parties may raise defenses through a motion to dismiss under Rule 12(b)(6), the courts view them through the standards applicable to such motions. This includes viewing the alleged facts in the light most favorable to Plaintiff, even when considering the qualified immunity defense. When addressing qualified immunity through a motion to dismiss, courts scrutinize the conduct of the defendants as alleged in the complaint for objective legal reasonableness. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam); *accord Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

### III. SUPPLEMENTAL AUTHORITY

Plaintiff has filed a Notice of Supplemental Authority (ECF No. 71) to provide a decision from the Austin Division of the Western District of Texas. *See* ECF No. 71-1 (attached decision). On June 25, 2024, after Plaintiff had responded to the motions to dismiss in this case, the Honorable District Judge Robert Pitman of the Austin Division denied motions to dismiss filed by the same movant defendants as this case. *See Garcia Robles v. Ramirez*, No. 1:23-CV-981-RP, 2024 WL 3174388 (W.D. Tex. June 25, 2024) (denying motions filed by Kinney County, Ronny Taylor, and Recana) (appeal filed).

Plaintiff characterizes *Garcia Robles* as similar to this case as it "was filed on behalf of a class of people over-detained without legal authority pursuant to Operation Lone Star." *See* ECF No. 71 at 1. Plaintiff asserts that the Austin court rejected arguments in *Garcia Robles* that are similar to those made by the same defendants in this case. *Id*. Plaintiff contends that the following rulings in *Garcia Robles* should apply equally here: (1) whether municipal liability was adequately pleaded against the County, (2) whether Taylor and Recana were responsible for alleged constitutional violations, (3) whether Taylor is entitled to qualified immunity, and (4) whether the negligence claim against Recana survives dismissal. *Id*. at 1–3.

The Court agrees that *Garcia Robles* provides relevant analysis to the matters currently

pending before this Court. But one important distinction seems to be that, unlike this case, *Garcia Robles* did not have an asserted Sixth Amendment claim. *See*, *generally*, 2024 WL 3174388 (lacking any mention of the Sixth Amendment). While the case does address over-detainment without legal authority, the plaintiffs premise their claims on the Fourth and Fourteenth Amendments. *See id*. at *2–7. "Naturally, under Fed. R. Civ. P. 12(b)(6), the success of a given motion to dismiss depends on the allegations of the operative pleading." *Woodstone Condo. Owners Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*, No. 5:24-CV-0364-JKP-ESC, 2024 WL 4612940, at *4 (W.D. Tex. Oct. 28, 2024). Thus, while *Garcia Robles* may inform this Court's ultimate decision on some matters before it, this Court will engage in its independent analysis of the issues as presented in this case. Notably, the qualified immunity issue of *Garcia Robles* has been appealed, and this Court has considered whether it might be best to stay this case pending resolution of that appeal. But the presence of Sixth Amendment claims here convinced this Court to proceed with the issues before it. But before reaching those claims, the Court will first consider the Fourteenth Amendment claim asserted against the County.

## IV. FOURTEENTH AMENDMENT

Plaintiff asserts that Kinney County violated his Fourteenth Amendment right to due process by detaining him after the legal authority to hold him expired. SAC ¶¶ 112–23. The County has moved for dismissal on grounds that Plaintiff has failed to allege necessary elements for municipal liability. ECF No. 62 ¶ 15 (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 568, 691 (1978)). It first contends that Operation Lone Star is a state policy, not a county policy. *See id*. ¶¶ 16–21. It contends that Plaintiff's timeline does not fit his narrative. *See id*. ¶ 19. It submits that Plaintiff alleges no facts that its decision to participate in OLS was made with deliberate indifference to a known or obvious risk. *Id*. ¶ 22. The County views the alleged offending policy as its participation in OLS and that Plaintiff makes insufficient factual allegations to find that it acted with any deliberate indifference. *Id*. ¶ 23. It further argues that the factual allegations

do not show (1) an official policy of unlawful detention, *see id.* ¶¶ 28–35 (relying in part on *Barcenas v. McCraw*, No. 1:22-CV-397-RP, 2024 WL 420157, at *7 (W.D. Tex. Feb. 5, 2024)) or (2) any constitutional violation, *see id.* ¶¶ 36–40. It also argues that there is no causal connection between any county policy and the alleged constitutional violation. *See id.* ¶¶ 41–46.

In response, Plaintiff contests the County's arguments and contentions, submits that reliance on *Barcenas* is misplaced, and urges denial of the motion to dismiss. *See*, *generally*, ECF No. 66. Further, by way of supplemental authority, Plaintiff relies on *Garcia Robles v. Ramirez*, No. 1:23-CV-981-RP, 2024 WL 3174388 (W.D. Tex. June 25, 2024) to support his position.

In *Garcia Robles*, Kinney County moved to dismiss on grounds that the plaintiffs had failed to identify a plausible policymaker or an official county policy. *See* 2024 WL 3174388, at *12. The court, however, found that the plaintiffs there had made sufficient allegations to proceed with their municipal liability claim against the County. *See id.* at *13. As for the alleged failure to identify an official county policy, the court stated that the plaintiffs had clearly alleged "specific policies, which Plaintiffs describe at length, concerning the release process of individuals arrested pursuant to OLS." *Id.* at *12. Further, the court went on and found that the plaintiffs had "further allege[d] that the overdetention of 'people in Defendant counties' custody occurred so regularly that it reflected and constituted a widespread practice or custom.'" *Id.*

The allegations here differ from those in *Garcia Robles* and *Barcenas*. That is why a particular prior case does not necessarily dictate an outcome in a later, similar case. But this case appears more analogous to *Garcia Robles* than to *Barcenas*. Plaintiff specifically identifies "Kinney County's unconstitutional policy of jailing people beyond the time when they must be legally released without taking any steps to prevent this violation of liberty." SAC ¶ 5. While Plaintiff has made numerous allegations about the OLS, that does not mean that the alleged County policy is mere participation in the OLS. And, despite the wording in paragraph 5, the unconstitutional overdetention of detainees is the alleged result of the absence of steps, i.e., policy, to prevent the

constitutional violation. Plaintiff makes sufficient allegations to find deliberate indifference on the part of the County plausible. He also describes at length the release processes for individuals arrested under the OLS. While Plaintiff does not expressly use the phrase "widespread practice or custom," the operative pleading contains factual allegations that present such an avenue for obtaining municipal liability.

To streamline this issue, the Court finds the supplemental authority persuasive and adopts its analysis of municipal liability as it pertains to Kinney County. It finds that, in this case, Plaintiff has the better arguments than the County, and the Court thus denies the County's motion to dismiss essentially for the reasons stated in Plaintiff's response to the motion.

## V. RIGHT TO COUNSEL

Plaintiff claims that Defendants Taylor and Recana have violated 42 U.S.C. § 1983 by violating his right to counsel under the Sixth Amendment. *See* SAC ¶¶ 124–36. These defendants have each moved to dismiss this claim on various grounds. *See* ECF No. 59 (motion of Taylor); ECF No. 60 (Recana's motion).

Taylor first argues that Plaintiff has failed to state a plausible Sixth Amendment claim. ECF No. 59 at 7–16. As subparts of this argument, Taylor contends that (1) Plaintiff does not allege that he was forced to engage in a critical stage proceeding without the assistance of counsel, *id*. at 9–10; (2) the delay was not unreasonable under the circumstances, *id*. at 10–12; (3) Plaintiff does not allege Taylor was personally involved in the violation of his Sixth Amendment rights, *id*. at 12–15; and (4) Plaintiff cannot rely on the Texas Fair Defense Act (Tex. Code Crim. Pro. Art. 1.051(i)) to show a Sixth Amendment violation, *id*. at 15–16. Apart from the general arguments concerning whether Plaintiff has stated a plausible claim, Taylor also argues that Plaintiff's claim for monetary damages is barred by qualified immunity. *See id*. at 16–17.

Relatedly, Recana first argues that Plaintiff has failed to state a § 1983 claim for any Sixth Amendment violation. ECF No. 60 at 6–14. Unlike Taylor, Recana initially focuses on elements

of municipal liability, i.e., official policy, policymaker, and moving force. *Id.* at 6–12. But Recana also argues that Plaintiff has not established a violation of the Sixth Amendment because (1) Plaintiff has not alleged that he lacked counsel during any critical stage of the proceedings, *id.* ¶ 25, and (2) Plaintiff cannot rely on the Texas Fair Defense Act under § 1983, *see id.* ¶ 26. Like Taylor, Recana also briefly asserts that qualified immunity bars any § 1983 claim against it. *See id.* ¶ 27.

Before addressing the proffered reasons for dismissal, the Court sets out applicable legal principles regarding the Sixth Amendment.

## A. Applicable Legal Principles Concerning Sixth Amendment

The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has "construed this to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 339–40 (1963). The "basic contours" of this right "are identical in state and federal contexts." *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (citing *Gideon*). "This right, guaranteed by the Sixth and Fourteenth Amendments, is indispensable to the fair administration of our adversary system of criminal justice." *Id.* Stated differently, this right is both "fundamental to our system of justice" and "meant to assure fairness in the adversary criminal process." *United States v. Morrison*, 449 U.S. 361, 364 (1981).

As recognized in *Brewer*, the right to appointment of counsel is as vital at the pretrial stage as it is at trial. 430 U.S. at 398. As aptly stated nearly a century ago:

> "[D]uring perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself.

*Powell v. State of Ala.*, 287 U.S. 45, 59–60 (1932).

Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth

Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

*Brewer*, 430 U.S. at 398 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

*Powell*, 287 U.S. at 68–69; *accord Gideon*, 372 U.S. at 344–45 (quoting much of the above paragraph).

From these cases, the right to assistance of counsel clearly runs from the date criminal proceedings have been initiated. More recently, the Supreme Court has held that "attachment of the right" does not also require that a prosecuting attorney "be aware of that initial proceeding or [be] involved in its conduct." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 194 (2008). In *Rothgery*, the Court discussed the "initial appearance before a magistrate" utilized in Texas, recognized that the appearance "is sometimes called the 'article 15.17 hearing,'" which "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." *Id.* at 195 (omitting footnote) (quoting *Kirk v. State*, 199 S.W.3d 467, 476–77 (Tex. App. – Fort Worth 2006, pet. ref'd) (citing Tex. Code Crim. Proc. Ann., Art. 15.17(a) (Vernon Supp. 2007))).

Recognizing prior precedent, the Supreme Court noted that it "has held that the right to

counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Id*. at 194 (citing *Brewer*, 430 U.S. at 398–99; *Michigan v. Jackson*, 475 U.S. 625, 629, n.3 (1986)). The issue before the Court in *Rothgery* was "whether Texas's article 15.17 hearing marks that point," when a prosecution has commenced, "with the consequent state obligation to appoint counsel within a reasonable time once a request for assistance is made." *Id*. at 198. The Court found that "Texas's article 15.17 hearing is an initial appearance: Rothgery was taken before a magistrate, informed of the formal accusation against him, and sent to jail until he posted bail." *Id*. at 199. It thus found that "*Brewer* and *Jackson* control" and that both cases dictated finding that the right to counsel had attached at that initial appearance. *See id*. 199–204. In short, "the first formal proceeding is the point of attachment." *Id*. at 203. And "without a change of position, a defendant subject to accusation after initial appearance is headed for trial and needs to get a lawyer working, whether to attempt to avoid that trial or to be ready with a defense when the trial date arrives." *Id*. at 210.

In summary, as reaffirmed in *Rothgery*, "[a]ttachment occurs when the government has used the judicial machinery to signal a commitment to prosecute as spelled out in *Brewer* and *Jackson*." *Id*. at 211–12. Post-attachment, "the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Id*. at 212 (footnotes omitted). Consequently, "counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Id*. Further, "Texas's article 15.17 hearing plainly signals attachment, even if it is not itself a critical stage." *Id*.

Of course, courts and litigants must avoid "merging the attachment question (whether formal judicial proceedings have begun) with the distinct 'critical stage' question (whether counsel must be present at a postattachment proceeding unless the right to assistance is validly waived)."

*See id.* at 211. Similarly, whether the right to counsel "has been violated and whether [the accused] has suffered cognizable harm are separate questions from when the right attaches, the sole question before" the Supreme Court in *Rothgery*. *Id.* at 212 n.17. *Rothgery*

> merely reaffirm[ed] what [the Court had] held before and what an overwhelming majority of American jurisdictions understand in practice: a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.

*Id.* at 213. *Rothgery* broke no new ground and did not alter the legal landscape.

The right to counsel "assure[s] that the 'guiding hand of counsel' is available to those in need of its assistance." *United States v. Ash*, 413 U.S. 300, 308 (1973) (quoting *Gideon*, 372 U.S. at 344–45). Historically, "the core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Id.* at 309. Nevertheless, "changing patterns of criminal procedure and investigation . . . have tended to generate pretrial events that might appropriately be considered to be parts of the trial itself," thus, resulting in the extension of the right to counsel to these events. *Id.* at 310. "In recognition of these realities of modern criminal prosecution," the Supreme Court has "construed the Sixth Amendment guarantee to apply to critical stages of the proceedings." *Id.* at 310–11 (citation and internal quotation marks omitted). The test for determining whether to extend the guarantee to new circumstances "call[s] for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." *Id.* at 313. Texas follows this test. *See Green v. State*, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994) (en banc).

The Supreme Court has further recognized that the premise of its prior cases addressing Sixth Amendment deprivations "is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense." *Morrison*, 449 U.S. at 365. Without "such impact on the criminal

proceeding . . . there is no basis for imposing a remedy in that proceeding." *Id*. The focal point is whether there was "prejudice of any kind, either transitory or permanent, to the ability of . . . counsel to provide adequate representation in th[e] criminal proceedings." *Id*. at 366. Further, that a Sixth Amendment violation provides no basis for a remedy within the criminal proceedings, does not mean that "a Sixth Amendment violation may not be remedied in other proceedings." *Id*. at 367.

**B. Alleged Violation of Sixth Amendment**

Along with the four subparts previously identified, Taylor first argues that Plaintiff has not stated a plausible Sixth Amendment claim. ECF No. 59 at 7–16. Recana likewise argues that Plaintiff has failed to state such a claim. ECF No. 60 at 6–14. The Court will first consider their overlapping arguments before separately addressing their arguments based on qualified immunity and municipal liability.

In this case, there is no question that Plaintiff's right to counsel attached at his initial appearance before the state magistrate. Further, according to Plaintiff's allegations, the magistrate found him indigent and entitled to appointment of counsel. Plaintiff was thus entitled to the advice and representation of counsel during his pretrial detention. And to assure adequate representation at any critical, pretrial stage, counsel must be appointed within a reasonable time after that initial appearance. Plaintiff did not receive appointed counsel for seventy-six days. Forty-six of these days came after the date that, based on the accusation against Plaintiff, state law—Tex. Code Crim. P. Art. 17.151 § 1(2)—required his release on cashless bond or a bail reduction, "if the state [wa]s not ready for trial of the criminal action for which he [wa]s being detained." Because no one brought formal charges against Plaintiff during the thirty-day period of Article 17.151, and indeed no formal charges were ever brought, the Court reasonably infers that the state was not ready for trial within the requisite thirty-day period. Indeed, under Texas law, "[t]he State cannot announce ready for trial when there is no indictment." *Ex parte Castellano*, 321 S.W.3d 760, 763 (Tex. App.

– Fort Worth 2010, no pet.) (citing cases). Trial readiness is not an issue on the facts alleged.

Taylor notes that EO 13 issued March 29, 2020, suspended Article 17.151. ECF No. 59 at 11 & n.4. Through EO 13, Governor Abbott recognized "that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas." *See* ECF No. 59-4 at 2. Accordingly, as noted previously, Governor Abbott partially suspended Article 17.151. *See id.* at 3. This partial suspension, however, did not affect the requirement for a bail reduction. *See Ex parte Montes*, No. 04-20-00337-CR, 2021 WL 603368, at \*2–3 (Tex. App. – San Antonio Feb. 17, 2021, no pet.). Article 17.151 uses mandatory language. *Ex parte Gill*, 413 S.W.3d 425, 431 (Tex. Crim. App. 2013). Accordingly, absent applicability of an exception set out in Article 17.151(2)—all inapplicable here—if the State is not ready for trial within the Article 17.151 time periods (thirty days in this case), "the trial court has only two options: it must either release the defendant on personal bond or reduce bail to an amount the defendant can make." *Ex parte Montes*, 2021 WL 603368, at \*2 (citing *Ex parte Gill*, 413 S.W.3d at 429, 431). And the "plain language [of] executive order GA-13 only suspends part of article 17.151's automatic release requirement." *Id.*

Notably, after Governor Abbott later "declared a state of disaster concerning border security," the Texas Supreme Court issued an Emergency Order Regarding Indigent Defense on August 30, 2021. *See* ECF No. 59-2. "To protect the constitutionally and statutorily right to counsel of indigent criminal defendants," the Emergency Order modified various provisions of Texas law, but not Article 17.151. *See id.* ¶ 2. It expressly modified Article 15.17(a) "to authorize a magistrate to appoint counsel for an indigent defendant upon request received at a proceeding under Article 15.17." *See id.* ¶ 2b.

The Court reasonably infers from the allegations of this case that Plaintiff requested counsel at his Article 15.17 hearing and the magistrate determined that he was entitled to appointment of counsel. *See* SAC ¶ 42. But counsel was not formally appointed until after the DO conducted

its own investigation and specifically requested Plaintiff's paperwork on December 16, 2021. *See id.* ¶¶ 44–51. Finally, on December 21, 2021, counsel was appointed the day after the DO received the necessary paperwork. *Id.* ¶¶ 53–54.

Had Plaintiff been "provided counsel immediately following his article 15.17 hearing," he would undoubtedly have received appointed counsel within a reasonable time. *See Alexander v. Lumpkin*, No. H-20-825, 2022 WL 4280739, at *11 (S.D. Tex. Aug. 24, 2022) (recommendation of Mag. J.) *adopted by* 2022 WL 4277298 (S.D. Tex. Sept. 15, 2022). But Plaintiff was not provided appointed counsel for seventy-six days, forty-six of which followed the date he was entitled to a bond reduction under Tex. Code Crim. P. Art. 17.151 § 1(2). Under these alleged facts, the Court has no difficulty in finding that Plaintiff has stated a violation of the Sixth Amendment sufficient to avoid dismissal under Fed. R. Civ. P. 12(b)(6) subject to further consideration of municipal liability and qualified immunity principles.

As part of his general arguments as to Plaintiff stating a plausible Sixth Amendment claim, Taylor argues that Plaintiff "must show that counsel was not appointed within a reasonable time after [his] initial appearance to state a claim under the Sixth Amendment." ECF No. 59 at 8. But, as a general principle at this point in the litigation, the focus is merely on Plaintiff's allegations. With that focus, Plaintiff has alleged enough facts to plausibly state a Sixth Amendment claim that appointment of counsel was not within a reasonable time of his initial appearance. The alleged delay in this case satisfies that pleading standard. Later, the Court will address the specific issue of reasonableness under the circumstances of the OLS.

### 1. Prejudice

Taylor suggests that *Rothgery* and *Morrison* support finding no prejudice to Plaintiff under the facts of this case. *See* ECF No. 59 at 9. More specifically, Taylor argues that Plaintiff cannot show prejudice because he has not alleged that he had to engage in any critical stage without the assistance of counsel. *Id.* at 9–10; ECF No. 70 at 1. Recana makes a similar argument. *See* ECF

No. 60 ¶¶ 24–25. This argument misses the point.

As mentioned earlier, the right to counsel applies beyond the critical stages arising from criminal procedures. It applies from the point of attachment through trial. The right attached under the facts of this case at Plaintiff's initial appearance. "Once attachment occurs, the accused at least is entitled to the presence if appointed counsel during any 'critical stage' of the postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 (2008) (footnote omitted). Consequently, Plaintiff was entitled to appointment of counsel "within a reasonable time after attachment to allow for adequate representation at any critical stage before trial." *Id.*

The right to counsel is more than the presence of counsel at all critical stages. In 1932, the Supreme Court identified "the most critical period of the proceedings" as the time between arraignment and trial. *See Powell v. State of Ala.*, 287 U.S. 45, 59 (1932). *Powell* did not speak in terms of counsel's presence at a critical hearing, in fact, counsel was present at the trial in *Powell* but had not otherwise represented the accused so as to provide needed investigation and advice prior to trial. *See id.* at 59–61. It is black-letter law that, at the very least, the right to counsel means that an indigent accused is entitled to the assistance of counsel from the point in time that proceedings have commenced against him. *Brewer v. Williams*, 430 U.S. 387, 398 (1977).

There is support for finding that Plaintiff was entitled to the assistance of counsel at his initial appearance. *See*, *e.g.*, *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 738–39 (S.D. Tex. 2019) (adopting attached recommendation of Mag. J.); *Booth v. Galveston Cnty. (hereinafter Booth)*, No. 3:18-CV-00104, 2019 WL 3714455, at *14 (S.D. Tex. Aug. 7, 2019) (recommendation of Mag. J.) *adopted as modified on other grounds by* 2019 WL 4305457 (S.D. Tex. Sept. 11, 2019), *appeal dismissed*, No. 19-40785, 2023 WL 9793007 (5th Cir. Sept. 27, 2023). Notably the "issuance of bail was not an issue in the case since *Rothgery* had waived the right to have appointed counsel present at the initial bail hearing." *See Booth*, 2019 WL 3714455, at *14 (citing *Rothgery*,

554 U.S. at 196 n.5). With bail being uncontested, "the high court never addressed whether an initial bail hearing is a 'critical stage' of trial." *Id.* While *Booth* may have some overruling risk in part, *see Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (partially overruling relied upon cases, *ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018) and *ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018)); *Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 548 (2024), this Court finds such risk immaterial to the matters before it. The Court, furthermore, finds *Booth* persuasive in general as to the right-to-counsel issue, and particularly persuasive as to its discussion of what constitutes a critical stage.

As noted in "simple terms" in *Booth*, "a 'critical stage' is 'a step of a criminal proceeding . . . that h[olds] significant consequences for the accused.'" 2019 WL 3714455, at *11 (quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002)). *Booth* identified various stages "that have been deemed critical for Sixth Amendment purposes," including "preliminary hearings; arraignments; plea negotiations; postindictment identification lineups; guilty pleas; and postindictment interrogations." *Id.* (parenthetical citations and internal quotation marks omitted). *Booth* recognized "common themes" for these stages: (1) "competent counsel is necessary to help a defendant navigate the complicated, treacherous and, oftentimes, confusing landscape of the criminal justice system," because a "defendant cannot be reasonably presumed to make critical decisions concerning his case without the advice of counsel" and (2) "it is imperative in all these cases that counsel be present 'at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality.'" *Id.* (quoting *United States v. Wade*, 388 U.S. 218, 224 (1967)).

And *Booth* found it to be "a no-brainer" that "counsel would be needed to help a defendant cope with complex legal problems raised during a [bail] hearing." *Id. Booth* is replete with analysis and support for finding that a bail hearing constitutes a critical stage at which the presence of counsel is mandated.

It should shock absolutely nobody that the failure to have counsel during an initial

bail hearing, when a critical decision is made concerning pretrial release, leads to concrete harm in the form of outcomes that are far worse than if counsel were provided. This harm is not just anecdotal or theoretical. Ample empirical research indicates that "delaying representation until after the pretrial release determination [is] the single most important reason for lengthy pretrial incarceration of people charged with nonviolent crimes. Without counsel present, judicial officers ma[k]e less than informed decisions and [a]re more likely to set or maintain a pretrial release financial condition that [are] beyond that individual's ability to play."

In addition to an indigent defendant's obvious need to have counsel at an initial bail hearing to provide general advice and advocate for release, there are tangible adverse consequences as to the ultimate disposition of the criminal case that can result if an individual is not represented at an initial bail hearing. If a criminal defendant does decide to speak up at an initial bail hearing without the presence of counsel, it is often in an effort to explain the situation in the hopes of obtaining release. This increases the likelihood of the individual making an incriminating statement that can be used against him at a later date. And if an individual makes an incriminating statement at a bail hearing, the appointment of a lawyer to represent the individual later in the criminal case would, in effect, be meaningless.

*Id*. at *12–13 (citations omitted).

As discussed in *Booth*, the Supreme Court has provided "quite instructive" discussion as to "whether a bail hearing should be categorized as a 'critical stage' of a criminal prosecution." *Id.* at *13 (citing *Coleman v. Alabama*, 399 U.S. 1 (1970)). In *Coleman*, the Supreme Court considered whether a preliminary hearing not required by Alabama law constituted a critical stage of the criminal process. *See* 399 U.S. at 8–9. The Supreme Court accepted the lower court's "construction of the governing Alabama law," as (1) instructing that "the sole purposes of a preliminary hearing are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury and, if so, to fix bail if the offense is bailable" and (2) assuring that "nothing occurring at the preliminary hearing in the absence of counsel can substantially prejudice the rights of the accused on trial." *Id.* at 8.

Still, the Supreme Court found that, "from the fact that in cases where the accused has no lawyer at the hearing the Alabama courts prohibit the State's use at trial of anything that occurred at the hearing, it does not follow that the Alabama preliminary hearing is not a 'critical stage' of the State's criminal process." *Id.* at 9. In reaching that finding, the Court first stated the obvious:

"Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution." *Id*. It then identified four ways in which an attorney protects the accused, including being "influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination **or bail**." *Id*. (emphasis added). Given the identified "advantages of a lawyer's assistance," the Court found that "[t]he inability of the indigent accused on his own to realize these advantages . . . compel[led] the conclusion that the Alabama preliminary hearing is a critical stage of the State's criminal process at which the accused is 'as much entitled to such aid (of counsel) . . . as at the trial itself.'" *Id*. at 9–10 (omitting some quotation marks and quoting *Powell*, 287 U.S. at 57).

"Following this same logic, courts across the country have held that a bail proceeding is a 'critical stage' requiring the appointment of counsel for indigent defendants." *Booth*, 2019 WL 3714455, at *13 (citing cases). In light of the reasoning set forth, "it should come as no surprise that the [*Booth*] Court conclude[d] that a hearing at which bail is set is a 'critical stage,' requiring the appointment of counsel for indigent defendants." *Id*. at *14. Because the court viewed the argument as "greatly overstat[ing], the holding of *Rothgery*," the *Booth* court rejected an argument that, based upon *Rothgery*, "there is no Sixth Amendment right to counsel at an initial bail hearing." *Id*.

This Court need not go as far as *Booth* and hold that there is a right to counsel at the initial appearance where bail is initially considered. The facts of this case do not require a definitive answer to that particular question. The analysis in *Booth*, however, fully supports finding that a bail reduction hearing constitutes a critical pretrial stage where the presence of counsel is required. Under the alleged facts of this case, Tex. Code Crim. P. Art. 17.151 § 1(2) required Plaintiff's release on cashless bond or a bail reduction within thirty days of Plaintiff's arrest and initial hearing. That no one set a bail reduction hearing despite the statutory mandate exemplifies Plaintiff's

need for assistance of counsel during that period leading up to the mandatory change in bail. Had counsel been appointed within a reasonable time of the initial hearing, Plaintiff would have had a knowledgeable expert who understood the legal procedures and who could have assured that the requirements of Article 17.151 were met.

Although suspension of Article 17.151 eliminated mandatory release on personal bond, the statute still required a bail reduction. As a critical pretrial stage, the presence of counsel at a bail reduction hearing is constitutionally mandated. *Rothgery* requires appointment of counsel to provide adequate representation at any critical stage. Additionally, at a minimum, the reasonable time permitted for appointment under *Rothgery* cannot interfere with a critical stage. Thus, the reasonable time for an appointment must not encroach on the time necessary for appointed counsel to adequately represent the defendant at the pretrial critical stage. This means that counsel must be appointed at a point in time sufficient for counsel to advise and guide the indigent accused during the critical stage. Prejudice is not avoided merely because no one scheduled a bond reduction hearing at which counsel must be present. The guiding hand of an appointed attorney must be available to accused indigents who need assistance of counsel. *See United States v. Ash*, 413 U.S. 300, 308 (1973). This assistance must be provided within a reasonable time after the right to counsel attaches so as "to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Rothgery*, 554 U.S. at 212. As supported by *Powell*, *Brewer*, and other Supreme Court cases, the natural corollary of this requirement is that counsel must be provided within a reasonable time before any critical hearing. Naturally, in some instances, this requirement may be met by appointment of counsel at the critical stage. But one cannot simply let a critical stage pass without the appointment of counsel and then urge a lack of prejudice to the indigent accused.

Taylor states: "Where the denial of the right to counsel results in no 'demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.'" ECF No. 59 at 9 (quoting *United States v. Morrison*, 449

U.S. 361, 365 (1981)). To the extent that Taylor contends that *Morrison* provides some means to avoid liability in this case, the contention is wrong. As already mentioned, *Morrison* recognized that, even when a Sixth Amendment violation may provide no recourse for a remedy within the criminal proceedings, the violation may "be remedied in other proceedings." 449 U.S. at 367. Consequently, *Morrison* does not foreclose civil liability for a Sixth Amendment deprivation even if there is no basis for a remedy in the criminal case.

Under the facts alleged in this case, moreover, Plaintiff was deprived of representation until counsel was appointed. So long as counsel is appointed within a reasonable time a delayed appointment does not run afoul of the Sixth Amendment. But delay in appointment certainly precludes appointed counsel from representing the accused at all. During such a delay, the attorney has no ability to adequately represent the accused's interests in the criminal proceedings. And, in this instance, the delay extended past the date when state law, at a minimum, required a bond reduction. Due to the delay in appointment of counsel, Plaintiff lost the opportunity to obtain a bail reduction and thus an earlier release from detention. This is sufficient prejudice to support a Sixth Amendment violation.

## 2. **Reasonable under the Circumstances**

Taylor next specifically argues that a two-month delay in appointing counsel was reasonable in light of the circumstances. ECF No. 59 at 10. Taylor contends that the circumstances, as alleged by Plaintiff, make the alleged two-month delay reasonable. *Id*. Taylor identifies two circumstances that he contends affect the reasonableness of the delay: (1) "the sheer volume of arrests made pursuant to OLS" and (2) COVID-19 was "an ongoing challenge in late 2021 when [Plaintiff] was arrested." *Id*. at 11.

What qualifies as a reasonable time undoubtedly depends on the facts and circumstances of a given case. And the Court agrees that some unique and unprecedented circumstances may affect the reasonableness of a delay in appointment of counsel. But, as a general matter, it is

unreasonable to delay appointment of counsel beyond the date that state law requires a bond reduction or release on personal bond. An accused without legal representation may not know of such statutory requirement. Appointment of counsel is needed before that date passes so that the attorney can protect the rights of the accused to the statutory bail reduction.

Governmental entities may not "conveniently ignore the constitutional requirement to provide counsel" at a bail reduction hearing by not scheduling such a hearing. *See Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2019 WL 3714455, at *15 (S.D. Tex. Aug. 7, 2019) (recommendation of Mag. J.) (addressing right to counsel in context of initial bail hearing) *adopted as modified on other grounds by* 2019 WL 4305457 (S.D. Tex. Sept. 11, 2019), *appeal dismissed*, No. 19-40785, 2023 WL 9793007 (5th Cir. Sept. 27, 2023). They may not simply let time pass, thereby denying a bail reduction by mere inaction. Had counsel been appointed for Plaintiff at, or soon after his initial appearance, counsel would have had the opportunity to advise Plaintiff of the required bail reduction and, if necessary, seek a bail reduction hearing.

Taylor relies on the COVID pandemic as one reason to find the delay in this case reasonable. Governor Abbott recognized the problems created by the pandemic by issuing EO 13. The EO modified numerous provisions of Texas law, including Article 17.151. But the EO did not suspend Article 17.151 in its entirety. Moreover, after Governor Abbott declared a state of disaster concerning border security, the Texas Supreme Court issued an Emergency Order (and has continued to renew it) with the specific purpose of "protect[ing] the constitutionally and statutorily right to counsel of indigent criminal defendants." While the Texas Supreme Court modified various provisions of Texas law through the Emergency Order, it did not modify Article 17.151. This Court finds that, as pertinent to the time period of this case, the COVID pandemic provided no basis for extending the normal customary time for what would be deemed a reasonable time to appoint counsel. In other words, for purposes of this case, the COVID pandemic is not an adequate justification for delaying appointment of counsel. By the time of Plaintiff's arrest, the judicial system

had taken steps to lessen the impact of COVID on judicial proceedings, including use of video hearings, etc.

Likewise, the Court finds no basis for substantially extending the normal customary reasonable time to account for the alleged fact that under Operation Lone Star, Kinney County was prosecuting five to six hundred cases a month instead of the previously normal "ten misdemeanor prosecutions a month," *see* SAC ¶¶ 36–37. The increased prosecutions may create logistical issues for appointing attorneys to those in need. But logistical issues created through Operation Loan Star do not justify delaying appointment of counsel when the delay reaches a point of depriving Sixth Amendment rights to accused indigents who are entitled to release on personal bond or a bail reduction within thirty days of their first appearance by operation of Texas law. While the Court might accept that the asserted logistical issues may reasonably delay appointment by a few days, the Court need not split hairs as to how much additional delay may be constitutionally acceptable. The asserted logistical problems do not justify extending the reasonable time for appointment beyond the date Texas law requires release on a personal bond (suspended at the relevant time) or a bond reduction.

The Texas Supreme Court recognized this, as shown by its Emergency Order modifying various provisions of Texas law—but not Article 17.151. The Emergency Order is geared to providing alternate ways to appoint counsel, not to hinder appointment of counsel. Deprivation of a constitutional right is not excused merely because governmental entities or agents choose to continue to arrest and prosecute misdemeanor offenses despite burgeoning caseloads and full detainment facilities. Nor are delays in appointing counsel deemed reasonable merely due to governmentally created logistical issues. This is not an issue where delay is outside the control of governmental entities and their officials. Instead, a newly instituted governmental operation placed great burdens on the ability to process detainees. Such burdens could have been lessened through the exercise of greater discretion as to making arrests and prosecuting individuals for misdemeanor

26

offenses.

Governmental entities may not infringe on the constitutional right to counsel by creating circumstances that in turn create a shortage of attorneys or by fostering an environment that does not adequately protect the right to counsel for those arrested. The simple solution in such circumstances is to exercise greater discretion while making arrests or pursuing prosecutions. If a particular jail or holding facility is filled to the brim, such discretion cautions against arrests for misdemeanor offenses. The same is true when the number of arrestees clogs the prosecutorial machinery. Naturally, the right to counsel could be protected by appointing counsel at the initial hearing before the state magistrate.

The United States "Constitution protects against arbitrary governmental overreach, no matter how slight the government contends that its incursions are." *Pimentel v. City of Los Angeles*, 115 F.4th 1062, 1073 (9th Cir. 2024) (addressing the Excessive Fines Clause of the Eighth Amendment); *accord United States v. Johnson*, No. 20-CR-926, 2024 WL 2019541, at *4 (N.D. Ill. May 6, 2024) (discussing Second Amendment). If a perceived solution to one problem, i.e., trespassing along the Texas border, creates a constitutional problem, the better course is to revisit or modify the perceived solution so as to avoid the constitutional issue. With respect to appointment of counsel for those entitled to it, the solution appears simple—appoint counsel at the initial appearance. The Texas Supreme Court foresaw this solution when it modified Article 15.17(a) to authorize such appointment when it issued its Emergency Order to protect the right to counsel. *See* ECF No. 59-2 ¶ 2b.

Taylor has identified no circumstances that warrant extending the reasonable time for appointment of counsel. Under the totality of the alleged circumstances of this case, Plaintiff has alleged facts to support finding that he was not appointed counsel within a reasonable time of his initial appearance. He has alleged sufficient facts to support finding that he was prejudiced by this failure by his continued detention without a bail reduction hearing past the date in which Texas

law required him to have a bail reduction.

### 3. Reliance on Texas Fair Defense Act

Both Taylor and Recana argue that Plaintiff may not rely on a violation of Texas law as a premise for his Sixth Amendment claim. ECF No. 59 at 15–16; ECF No. 60 ¶ 26. Plaintiff does mention that, since its enactment in 2001, the Texas Fair Defense Act requires that counsel "be appointed within one to three days of initial appearance before a magistrate." SAC ¶ 126 (citing Tex. Code Crim. Pro. Art. 1.051(i)).

Effective September 1, 2015, Article 1.0151 sets forth numerous requirements as to the right to representation by counsel. *See*, *generally*, Tex. Code Crim. Pro. Art. 1.051. Paragraph (a) provides: "A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding. The right to be represented by counsel includes the right to consult in private with counsel sufficiently in advance of a proceeding to allow adequate preparation for the proceeding." This paragraph seems particularly notable in that it effectively codifies the federal right to assistance of counsel guaranteed by the Sixth Amendment as discussed previously in this Memorandum Opinion and Order.

Paragraph (c) provides that "[a]n indigent defendant is entitled to have an attorney appointed to represent him in any adversary judicial proceeding that may result in punishment by confinement and in any other criminal proceeding if the court concludes that the interests of justice require representation." In general, Paragraphs (c) and (i) require appointment of counsel within three days.

Defendants are correct that a violation of state law cannot form the premise for a § 1983 claim. "It is well established that violations of state law are not actionable under § 1983." *Whitt v. Stephens Cnty.*, 236 F. App'x 900, 902 (5th Cir. 2007) (citing *San Jacinto Sav. & Loan v. Kacal*, 982 F.2d 697, 701 n.4 (5th Cir.1991)); *accord Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("However, a violation of a state statute alone is not cognizable under § 1983 because §

1983 is only a remedy for violations of federal statutory and constitutional rights."). But it does not appear that Plaintiff is relying on any violation of the Texas Fair Defense Act as a premise for the claim. Instead, Plaintiff expressly premises his § 1983 claim on a violation of the Sixth Amendment, which is clearly federal law. Because applicable provisions of state law are certainly part of the totality of the circumstances, it appears permissible to consider Texas law as to what time period may or may not be reasonable with respect to appointing counsel for Plaintiff. Nevertheless, at this point, the Court has no need to rely on any such consideration in this case to find sufficient allegations that Plaintiff was not appointed counsel within a reasonable time.

### 4. **Personal Involvement**

Taylor next argues that Plaintiff has insufficiently alleged his personal involvement in the delayed appointment of counsel to Plaintiff. *See* ECF No. 59 at 12. He argues that Plaintiff conflates allegations made against both him and Recana because they were both responsible for sending necessary paperwork. *Id.* at 13. Taylor contends that his potential liability would cease after November 2021 when Recana took over full responsibility for operating the detention center. *Id.*

Plaintiff, however, makes sufficient allegations of Taylor's personal involvement to support a Sixth Amendment claim. In addition to allegations already recited extensively, i.e., SAC ¶ 10, Plaintiff alleges that "the operators of the Val Verde Processing Center should have immediately sent Rivera's paperwork to the Lubbock Private Defenders' Office, they failed to do so, despite repeated notices from the Office that they were missing necessary paperwork for large numbers of people processed through the Center." *Id.* ¶ 45. Even more specifically, Plaintiff alleges that Taylor and Recana failed to fulfill their duty to send necessary paperwork to the appointing authority. *Id.* ¶ 129. As alleged, these two defendants, "[a]s the operators of the Val Verde Processing Center . . . were responsible under state law" for sending such paperwork. *Id.* As previously noted, Plaintiff also alleged that the DO frequently contacted the Center to request lists of detainees because of unreliable transfers of necessary paperwork for appointment of counsel. *See id.* ¶ 50.

Plaintiff alleges that "Defendants knew or were deliberately indifferent to these harms," *id*. ¶ 133, previously identified as failing to process his paperwork, holding him beyond the date that the County was required to reduce his bond, and thus depriving him of his right to counsel, *see id*. ¶¶ 130-32. To support the knowledge and deliberate indifference, he alleges that (1) the DO "repeatedly reached out to the Center to request a list of people detained under Operation Lone Star because of the problem of missing documentation," (2) "the problem of uncounseled people being detained past their Article 17.151 deadlines under Operation Lone Star was well publicized in both state and national media," and (3) "both Taylor and Recana have extensive experience in jail administration duties in Texas and therefore understood both their responsibility to properly process paperwork necessary for appointment of counsel and the consequences of failing to do so." *Id*. ¶ 133. Plaintiff makes numerous allegations about known media attention regarding detainees held past the dates which state law required their release some of whom had not been appointed counsel. *See id*. ¶¶ 71–75. He makes other allegations regarding the appointment of visiting judges who attempted to remedy the issue of unlawful detention before having their appointments terminated. *Id*. ¶¶ 78–87.

Only two circumstances permit holding a supervisory official liable under 42 U.S.C. § 1983: "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). And "to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id* (quoting *Gates* with omissions); *accord Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022).

"First and most often, deliberate indifference generally requires notice of a pattern of

30

similar violations at the time the plaintiff's own rights were violated." *Robles v. Ciarletta*, 797 F. App'x 821, 833 (5th Cir. 2019) (per curiam). And "in narrow circumstances, when a constitutional violation results as the highly predictable consequence of a failure to train, the failure to train can amount to deliberate indifference." *Id.* at 833–34. "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). As a case progresses, deliberate indifference "requires evidence that an official 'disregarded a known or obvious consequence of [their] action[s].'" *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022) (discussing issue in context of summary judgment) (quoting *Porter*, 659 F.3d at 446–47); *accord Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Evidence is not required at this stage of litigation. *Parker*, 23 F.4th at 524. And Plaintiff has made enough factual allegations to hold Taylor liable as a supervisory official. There are allegations of affirmative participation as well as implementation of polices and procedures governing the sending of paperwork necessary for appointment of counsel. There are also allegations of repeated failures of the Center in its duty to send appointment paperwork while under Taylor's and Recana's supervision, including cases with missing paperwork even before Plaintiff's arrest. To the extent the operative pleading may have gaps in its allegations as Taylor contends, the Court finds the allegations sufficient to reasonably infer his personal involvement. In short, Plaintiff's allegations of personal involvement are enough to survive a Rule 12(b)(6) motion to dismiss. The allegations are more than conclusional assertions.

### 5. Summary as to Alleged Sixth Amendment Violation

For the foregoing reasons, the Court finds that Plaintiff has stated a Sixth Amendment claim sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6).

## C. Qualified Immunity

Both Recana and Taylor assert qualified immunity protection. *See* ECF No. 59 at 16–17;

ECF No. 60 ¶ 27. As to Recana's assertion, Plaintiff makes three arguments: (1) Recana waived qualified immunity by not identifying relevant legal standards and Fifth Circuit precedent; (2) Recana is not entitled to such protection because the immunity applies to individual officials not to the employing entity; and (3) even if qualified immunity applied, the illegalities of Recana's practices were clearly established. ECF No. 65 at 17–18. Relatedly, Plaintiff argues that qualified immunity does not protect Taylor because "he knew that the Center was supposed to promptly send appointment paperwork, that it wasn't happening, and that people were being denied counsel indefinitely as a result of the failures." ECF No. 64 at 19. In reply, Recana and Taylor both maintain their entitlement to qualified immunity. *See* ECF No. 67 ¶¶ 18–19; ECF No. 70 at 6–7.

As the Supreme Court held long ago, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The Supreme Court noted in *Harlow* that in most cases, the 'of which a reasonable person would have known' language in the qualified immunity standard does not add anything to the 'clearly established law' requirement because 'a reasonably competent public official should know the law governing his conduct.'" *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (en banc) (quoting *Harlow*, 457 U.S. at 818–19).

The Supreme Court later "refined the qualified immunity standard by defining 'clearly established' in a way that encompasses the 'objective reasonableness' inquiry: To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 349–50 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (quoting *Harlow*, 457 U.S. at 819). And "the objective reasonableness of an official's conduct [is] measured by reference to clearly established law" as of "the time an

action occurred." *Harlow*, 457 U.S. at 818. If the law is not clearly established when conduct occurs, officials cannot "reasonably be expected to anticipate subsequent legal developments, nor could [they] fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.*

The "requirement—that an official loses qualified immunity only for violating clearly established law—protects officials accused of violating 'extremely abstract rights.'" *Ziglar*, 582 U.S. at 151 (quoting *Anderson*, 483 U.S. at 639).

> By defining the limits of qualified immunity essentially in objective terms, [courts] provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Harlow*, 457 U.S. at 819 (omitting footnote and quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

"The clearly established standard does not mean that officials' conduct is protected by qualified immunity unless the very action in question has previously been held unlawful." *Cantrell v. City of Murphy*, 666 F.3d 911, 919 (5th Cir. 2012) (quoting *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009)). This has been "known since *Anderson*." *Kinney*, 367 F.3d at 350. "Indeed, '[t]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations.'" *Cantrell*, 666 F.3d at 919 (quoting *Brown v. Miller*, 519 F.3d 231, 236–37 (5th Cir. 2008)); *accord Kinney*, 367 F.3d at 349–50; *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010).

"The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam ) (adding emphasis while quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). "That is because qualified immunity is

inappropriate only where the officer had 'fair notice'—'in light of the specific context of the case, not as a broad general proposition'—that his particular conduct was unlawful." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Requiring "materially similar" facts is inconsistent with Supreme Court precedent. *Id.*

Courts "must frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874–75. The Supreme Court has "repeatedly" guided courts "not to define clearly established law at a high level of generality." *al–Kidd*, 563 U.S. at 742 (citing cases); *accord City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam). It has stated

> that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citations omitted). This means that it is insufficient "that a rule is suggested by then-existing precedent." *Bond*, 595 U.S. at 12. Stated slightly differently, "clearly established" means "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up while omitting citation). Thus, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741.

When a "defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this

defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). Through this "shifting burden of proof," a "defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas*, 980 F.2d at 306. This is so "[b]ecause qualified immunity constitutes an affirmative defense."[3] *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Different types of officials may have differing burdens as to initial eligibility for qualified immunity, which may also differ based on the official's conduct. *See Douthit v. Jones*, 619 F.2d 527, 534–35 (5th Cir. 1980) (explaining different burdens for police officers, administrators managing prisons, and jailers imprisoning individuals). For instance, "an official such as a prison administrator, who must exercise an exceedingly broad range of discretion in performing his official duties . . . should be entitled to qualified immunity upon a showing that he acted within the scope of his discretionary authority." *Id*. at 534. But "the discretion that a jailer may lawfully exercise in imprisoning an individual is more limited in scope than even the discretion that a policeman may exercise in effectuating an arrest, much less the discretion accorded to a prison administrator in managing the prison." *Id*. at 535. Regardless of the parameters of the burden, once the defendant has carried his or her burden, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Salas*, 980 F.2d at 306.

This means that a "defendant official must first satisfy his burden of establishing that the

---

[3] The Court recognizes that qualified immunity is more than an ordinary affirmative defense. "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).   Still, as stated in *Pearson*, "the precise factual basis for the plaintiff's claim or claims may be hard to identify," when a defendant asserts "qualified immunity . . . at the pleading stage." 555 U.S. at 238–39.

challenged conduct was within the scope of his discretionary authority." *Cherry Knoll, LLC v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). If good faith is at issue, then making a requisite showing regarding good faith is part of the official's initial burden. *See McGee v. Carrillo*, 297 F. App'x 319, 321 (5th Cir. 2008) (per curiam). Unless defendants satisfy their initial burden, they do "not 'even get into the qualified-immunity framework.'"[4] *Diaz v. Cantu*, 123 F.4th 736, 749 (5th Cir. 2024) (quoting *Sweetin v. City of Tex. City*, 48 F.4th 387, 392 (5th Cir. 2022)). While this burden on governmental officials "often gets overlooked," the requirement can be dispositive of a qualified immunity assertion. *Sweetin*, 48 F.4th at 392.

The binding holdings of *Cherry Knoll* and *Sweetin* provide a basis for courts to conduct "a preliminary analysis" of the alleged conduct of parties asserting qualified immunity. *See Parker v. Armstrong*, No. 6:22-CV-00413-ADA, 2024 WL 3730657, at *4 (W.D. Tex. Aug. 7, 2024) (characterizing the holdings as "requiring a preliminary analysis"). Indeed, district courts err in determining that a defendant official is "entitled to the protection of qualified immunity at the Rule 12(b)(6) stage" when the defendant official has not carried his burden to show that his conduct "was within the scope of his discretionary authority." *Cherry Knoll*, 922 F.3d at 319. Whether or not *Cherry Knoll* and *Sweetin* require this Court to sua sponte consider whether Taylor and Recana have carried their initial burden, the Court finds that the cases at least provide a reason to do so.

Neither Taylor nor Recana recognize the extent of their burden with respect to qualified immunity. Indeed, Recana argues that "once qualified immunity has been invoked, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery." ECF No. 67 at 8. But mere invocation is not enough. It further contends that "the burden is on Plaintiff to explain why

---

[4] Whether Plaintiff has "stated a valid constitutional claim . . . is an issue *within* the qualified-immunity framework," and the Court need not address such issue in the context of qualified immunity absent Taylor carrying his burden to show that he acted within his discretionary authority. *Diaz*, 123 F.4th at 749–50. While recognizing this legal principle, the Court has considered whether Plaintiff has asserted a valid constitutional claim under the Sixth Amendment outside the specific context of qualified immunity. Such consideration not only comports with how the parties have briefed the issues, but more importantly, whether there is a valid constitutional claim transcends qualified immunity.

qualified immunity does not apply and not on Recana to explain why it does apply." *Id*. Taylor similarly argues that Plaintiff "has not overcome his burden" to show that Taylor is not entitled to qualified immunity. ECF No. 70 at 6. But Plaintiff's burden arises only after defendants carry their burden with respect to qualified immunity. Both Recana and Taylor skip this important step. Absent the party asserting qualified immunity carrying their burden, there is no need to reach the plaintiff's rebuttal of immunity.

In this case, Plaintiff argues that Recana is not entitled to qualified immunity because it is an entity, not a governmental official. ECF No. 65 at 17–18 (relying on *Owen v. City of Indep.*, 445 U.S. 622, 651 (1980)). Indeed, qualified immunity protects individual officials and does not extend to municipalities. *See Owen*, 445 U.S. at 650–52. While Recana correctly points out that it is a governmental contractor employed by a municipality, not a governmental municipality itself, *see* ECF No. 67 at 8, it does not show that it is entitled to qualified immunity. Although the Supreme Court has extended the immunity to private individuals in some instances, *see Filarsky v. Delia*, 566 U.S. 377, 389–94 (2012), Recana has presented no basis to extend the doctrine to it. And it provides nothing to show that it is a governmental official whose position involves the exercise of discretion. Recana is flatly wrong that it has no burden to bear. Because Plaintiff expressly argues that, as an entity, Recana is not entitled to qualified immunity, and because Recana has failed to carry its threshold burden to show that qualified immunity applies to it, the Court finds Recana not entitled to qualified immunity.[5]

Other than making rebuttal arguments as to Defendant Taylor's qualified immunity assertion, Plaintiff does not expressly argue that Taylor is not entitled to qualified immunity. But if Taylor has not carried his burden, the Court has no need to reach qualified immunity at all,

---

[5] While there may be a question as to whether Recana waived its claim to qualified immunity at this stage "by failing to provide adequate briefing," *see JTB Tools & Oilfield Servs., LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016), the Court has no need to address this waiver issue. The Court has instead opted to address Recana's qualified immunity assertion on its merits.

including Plaintiff's rebuttal arguments. *See Diaz*, 123 F.4th at 749–50. This is not a case where Taylor's actions appear clearly discretionary. Plaintiff alleges that under OLS, "the responsibility for handling magistration logistics and for sending appointment of counsel paperwork to the Lubbock Private Defenders' Office" is borne by "the operators of the processing centers," i.e., Taylor and Recana. SAC ¶ 34. Under the facts alleged by Plaintiff, once the magistrate found Plaintiff entitled to appointment of counsel at his initial appearance, *see id*. ¶ 32, Taylor had no discretion but to send the necessary paperwork for appointment of counsel. Such action appears purely ministerial in character.

"An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity." *Cherry Knoll*, 922 F.3d at 318 (quoting *Cronen*, 977 F.2d at 939). Courts "look to state law" when determining "whether an official was acting within the scope of his duties." *Sweetin*, 48 F.4th at 392. Under Texas law, a "ministerial act is an act '[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999) (quoting *Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996)). "Ministerial actions require obedience to orders or the performance of a duty to which the actor has no choice," whereas when "an action involves personal deliberation, decision and judgment, it is discretionary." 935 S.W.2d at 114 (citations omitted). "Ministerial acts alone do not give rise to a qualified immunity defense." *Parker*, 2024 WL 3730657, at *4.

Because it is Taylor's burden to show that his conduct fell within his discretionary authority, it falls to him to provide whatever is necessary to carry that burden. Taylor, however, has provided nothing to show that his actions fall within his discretionary authority. A lack of documentation can derail a qualified immunity assertion. *See McGee*, 297 F. App'x at 321. Even on a motion to dismiss, an official, such as Taylor, must carry his initial burden to show that actions were "committed to his discretion," and "ask[ing] for more is not to commit this case to trial," but

instead "to say that the case" may "need[] to move to the summary judgment stage, with its associated discovery." *Id*. at 321–22.

With respect to qualified immunity, the Court denies Taylor's motion to dismiss without prejudice. With such dismissal, the Court is not yet committing the issue to summary judgment. Such denial prudently balances the realization that the Court may lack necessary argument on the matter for a number of reasons, including Taylor not recognizing his initial burden and Plaintiff not expressly arguing that Taylor was not acting within his discretionary authority. Based on cited Fifth Circuit precedent, it appears that the Court could simply deny the motion to dismiss without providing Taylor another chance to assert and support his qualified immunity defense through another motion to dismiss under Fed. R. Civ. P. 12(b)(6). But in an abundance of caution, it appears permissible to obtain additional briefing on the matter under the circumstances here.

Because the Court is denying the motion without prejudice as to qualified immunity, it provides Taylor with another opportunity to assert that defense through a Rule 12(b)(6) motion to dismiss. Within such motion and submitted documentation, Taylor must carry his initial burden before the Court will reach any rebuttal arguments by Plaintiff. If Taylor must rely on evidence not properly considered under Rule 12(b)(6), the better course is to pursue the defense on summary judgment. The Court is not inclined to consider evidence at this stage that will require the Court to convert a motion to dismiss to one for summary judgment.

With the denial without prejudice, Plaintiff may need to again respond to another motion to dismiss. At that point, Plaintiff "must satisfy a two-prong test" to overcome an asserted qualified immunity defense and to carry [his] burden to show the defense is unavailable. *See Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). In the context of a motion to dismiss, plaintiffs carry their burden when their operative pleading alleges that (1) "defendants committed a constitutional violation under current law" and (2) "the defendants' actions were objectively unreasonable in light of the

law that was clearly established at the time of the actions complained of." *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). As discussed previously, Plaintiff has alleged conduct by Taylor that states a plausible Sixth Amendment violation. If Taylor reasserts qualified immunity in another Rule 12(b)(6) motion to dismiss and carries his initial burden on such defense, the Court will not revisit that prong. But, consistent with applicable law, it will consider whether the Sixth Amendment rights were clearly established under the facts alleged in this case.

"Given the degree of granularity involved in the qualified immunity analysis," to plausibly allege a clearly established violation often requires caselaw specific to the facts alleged. *See Ramirez v. Guadarrama*, 3 F.4th 129, 135 (5th Cir. 2021) (per curiam). To carry their burden "to overcome qualified immunity," plaintiffs must "'identify a case'—usually, a 'body of relevant case law'—in which 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). Although "there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate." *Wesby*, 583 U.S. at 64 (citations and internal quotation marks omitted). And naturally, "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam )). Absent such an obvious case, plaintiffs must "find a case in [their] favor that does not define the law at a high level of generality" as part of their burden to show that qualified immunity does not apply. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (internal quotation marks and citation omitted).

In summary, the Court finds Recana not entitled to qualified immunity and thus denies its motion as to that defense. Although it also finds Taylor not entitled to qualified immunity on the current motion, the Court will deny the motion as to qualified immunity without prejudice as stated

herein. Consistent with this order, Taylor may file another motion to dismiss on the basis of qualified immunity. And if he carries his initial burden on that defense, the Court will consider whether Plaintiff has carried its rebuttal burden. As reflected in cited cases, unless Plaintiff makes adequate arguments for less specificity, he will need to present arguments as to qualified immunity with enough specificity and granularity to show the defense inapplicable.

**D. Municipal Liability**

The Court now turns to the issue of municipal liability. Recana argues that Plaintiff has not sufficiently pled necessary elements. *See* ECF No. 60 at 6-12. It made similar arguments in *Garcia Robles v. Ramirez*, No. 1:23-CV-981-RP, 2024 WL 3174388 (W.D. Tex. June 25, 2024). Plaintiff presents that case as supplemental authority for ruling the same way in this case. While there are differences between this case and the supplemental authority, the Court finds the analysis set forth in the supplemental authority pertinent to this issue in this case.

As it did with respect to municipal liability against the County, the Court finds the supplemental authority persuasive and adopts its analysis of municipal liability as it pertains to Recana. *See Garcia Robles*, 2024 WL 3174388, at *13–14. Although Plaintiff here relies on the Sixth Amendment instead of unlawful detention under the Fourth or Fourteenth Amendments, that difference does not alter the persuasiveness of the legal analysis. Of course, the focus here is on whether Plaintiff has made sufficient factual allegations as to a municipal policy regarding appointment of counsel rather than release. The allegations in the operative pleading in this case are sufficient to state a plausible municipal liability claim against Recana for alleged violations of the Sixth Amendment.

## VI. NEGLIGENCE

Plaintiff asserts a negligence claim against Recana. SAC ¶¶ 137-43. Recana argues that Plaintiff does no more than merely state conclusory allegations of the elements of negligence. ECF No. 60 ¶ 31. It made similar arguments that the Austin Division rejected. *See Garcia Robles v.*

*Ramirez*, No. 1:23-CV-981-RP, 2024 WL 3174388, at *14 (W.D. Tex. June 25, 2024). The Court adopts the negligence analysis in *Garcia Robles* and likewise declines to dismiss the negligence claim. While Plaintiff could have provided more clear allegations regarding negligence, the Court finds them sufficient to state a plausible claim of negligence against Recana considering the operative pleading as a whole.

## VII. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Ronny Taylor's Motion to Dismiss (ECF No. 59); **DENIES** Recana Solutions, LLC's Motion to Dismiss (ECF No. 60); and **DENIES** Defendant Kinney County's Motion to Dismiss (ECF No. 62). As to qualified immunity only, the denial of Taylor's motion is without prejudice to him filing another motion to dismiss under Fed. R. Civ. P. 12(b)(6). In accordance with Fed. R. Civ. P. 12(a)(4), each defendant shall file their responsive pleading to Plaintiff's Second Amended Complaint **on or before February 18, 2025**, except that Defendant Taylor may instead file another motion to dismiss, if he so chooses.

**IT is so ORDERED this 6th day of February 2025.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**