UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**MOCTEZUMA RIVERA CASTELAN, on behalf of himself and others similarly situated,**

    *Plaintiff*,

v.     Case No. 5:23-CV-1394-JKP-RBF

**GARY VILLARREAL; KINNEY COUNTY; RONNY TAYLOR; and RECANA SOLUTIONS, LLC,**

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Renewed Motion to Dismiss (ECF No. 76) filed by Defendant Ronny Taylor. Pursuant to Fed. R. Civ. P. 12(b)(6), Taylor moves to dismiss the claims asserted against him on grounds of qualified immunity. The Court previously denied a similar motion without prejudice to provide Defendant Taylor and opportunity to carry his burden to establish that the conduct challenged by Plaintiff falls with the scope of Taylor's discretionary authority. *See* ECF No. 75 at 35–40. With Plaintiff's response (ECF No. 88) and Taylor's reply (ECF No. 90), the renewed motion is ripe for ruling.

Given the renewed nature of the motion, the Court sees no need to again set out the relevant background facts or applicable legal principles. It will instead include such facts and principles as needed to resolve the instant motion. At the outset, the Court must determine whether Defendant Taylor has carried his burden on the qualified immunity defense.

Taylor concedes that this case arises from Plaintiff's arrest on October 6, 2021, under Operation Lone Star. Mot. at 1. He maintains that the only relevant factual allegation is the allegation that Plaintiff appeared before a magistrate who determined that Plaintiff was entitled to appointment of counsel. *See id.* at 1–2 & n.2. Taylor characterizes the prior denial of his motion as "because of a purportedly unaddressed initial burden to demonstrate that [his] actions within his

discretionary authority." *Id*. at 4. To Taylor "[i]t seems clear that the Court's interpretation of the 'discretionary authority' burden is that a defendant asserting qualified immunity must affirmatively demonstrate that he *lacked* ministerial authority." *Id*. at 4–5. And if Taylor's "inference is correct, he asserts, with the greatest respect, that the Court has fundamentally misapprehended the 'discretionary authority' burden." *Id*. at 5. He contends without citation that "[w]hen contemplating this burden, the question before the Fifth Circuit has always been whether, when the relevant official *did* act, he did so with *any authority*." *Id*.

Taylor provides examples of cases where the relevant official acted without any authority. *See id*. at 5–6 (citing *Cherry Knoll, LLC v. Jones*, 922 F.3d 309 (5th Cir. 2019); *Sweetin v. City of Tex. City*, 48 F.4th 387 (5th Cir. 2022); and *Diaz v. Cantu*, 123 F.4th 736 (5th Cir. 2024)). That these cases involved officials who acted without any authority does not alter the burden set out and applied in each of the cases. To the extent this Court's prior order left any doubt about the nature and scope of Taylor's burden, it briefly revisits the cases Taylor cites.

In *Cherry Knoll*, the Fifth Circuit held: "The defendant official must first satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." 922 F.3d at 318 (relying on *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). It then explained: "An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity." *Id*. (quoting *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)).

In *Sweetin*, the Fifth Circuit recognized that "[t]o even get into the qualified-immunity framework, the government official must" first satisfy the burden set out in *Cherry Knoll*. 48 F.4th at 392. It noted that this "oft-overlooked threshold requirement" can be dispositive. *Id*. It further explained that courts "look to state law" when determining "whether an official was acting within the scope of his duties." *Id*. (relying on *Cherry Knoll* and *Cummings v. Davenport*, 906 F.3d 934, 943 (11th Cir. 2018)).

In *Diaz*, another Fifth Circuit panel, addressed "whether it matters that the lack of authority may not have been clear." 123 F.4th at 749. It found that the Fifth Circuit's "articulation of the standard for qualified immunity leaves little room for implying a 'clearly-established' modifier." *Id*. It then reiterated the burden set out in *Cherry Knoll*. *Id*. It recognized *Sweetin* as even "more explicit" in that decision's recognition that one does not "even get into the qualified-immunity framework" absent satisfying the burden set out in *Cherry Knoll*. *Id*. To end the discussion regarding clarity, the Fifth Circuit concluded that the "court's articulation, at least [its] recent expressions in *Cherry Knoll* and *Sweetin*, have validly been explicit that the discretionary authority must be held to exist." *Id*. It thus found it "immaterial whether it was clearly established" that the defendant official had no discretionary authority for the complained-of conduct. *Id*.

In this Court's prior order, it relied upon *Cherry Knoll*, *Sweetin*, and *Diaz. See Castelan v. Villarreal*, No. 5:23-CV-1394-JKP-RBF, 2025 WL 424538, at *20 (W.D. Tex. Feb. 6, 2025) (ECF No. 75 in this case). But unlike Taylor, this Court also delved into cases that the cited cases relied upon. *See id*. at *19 (citing *Salas* and *Cronen*). It also reviewed and considered other earlier cases. *See id*. (citing *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997); *Douthit v. Jones*, 619 F.2d 527, 534–35 (5th Cir. 1980)). Rather than begin with the more recent pronouncements of the Fifth Circuit, this Court reviewed the sources of those pronouncements—cases that remain good law despite the passing of many years. *Douthit* was particularly insightful in that it recognized that "the showing that a defendant official must make to avail himself of the qualified immunity defense varies depending upon the degree of discretion that he exercises in performing his official duties." 619 F.2d at 534. Suffice to say, this Court fully explored the burden that these cases place on defendant officials like Taylor.

Relying on *Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022), Taylor attempts to stand the burden on its head by placing it on the Plaintiff to show that Taylor was acting outside the scope of his discretionary authority. *See* Mot. at 6. But *Bevill* commences its discussion of the plaintiff's

3

argument that the defendants were "not entitled to qualified immunity because they were not acting within the scope of their discretionary authority," by recognizing the burden on the defendant under *Cherry Knoll, LLC v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) and the shifting of that burden to plaintiff to rebut the qualified immunity defense. 26 F.4th at 275. As was the case in *Bevill*, when the complained of conduct clearly falls within the official's discretionary authority, courts can easily dispose of the burden on the defendant official and proceed to the burden as shifted to the plaintiff. But, even when the defendant has carried its burden, nothing prevents the plaintiff from attempting to rebut the defendant's showing by the plaintiff's own showing that the defendants were acting outside of the scope of their discretionary authority. This interpretation maintains the burden-shifting recognized in *Cherry Knoll* with the statement in *Bevill* that "Bevill has not shown that Defendants were acting outside the scope of their discretionary authority." *See id*.

Without that consistent interpretation one must view *Bevill* as either (1) misapplying the burden that it had just stated was the defendant official's burden to bear or (2) violating the rule of orderliness by changing the burden contrary to *Cherry Knoll*. This Court finds both possibilities untenable when there is an interpretation that is consistent with and upholds the principles set out in prior appellate decisions. Furthermore, in *Bevill*, the plaintiff's "theory of the case would be completely undermined" absent "discretionary authority to restrain the flow of [relevant] resources." 26 F.4th at 275. That factual difference from this case provides an additional reason to not reinterpret the shifting burden related to discretionary authority as set out in *Cherry Knoll* and similar cases.

With that matter resolved, the Court looks to Taylor's motion to determine whether he has carried his burden. The obvious starting point is to identify the authority vested in him under state law. While recognizing that appointing counsel for criminal detainees "does appear to be at least in part a ministerial duty," Taylor argues that it was not his duty and "there is no provision in Texas law giving jailers such as [him] any role in appointing counsel for criminal detainees." Mot. at 7.

4

To support the argument, Taylor first sets out the duties of the magistrate as included in Tex. Code Crim. Proc. art. 15.17(a). *Id*. He contends that Article 15.17(a) is "black letter law" that makes "it the responsibility of the magistrate to appoint counsel, if the magistrate is authorized to do so, or if not authorized to transmit to the trial court or its designee the forms requesting such appointment within 24 hours." *Id*. at 8.

Taylor next adds Article 26.04 to the mix. According to Taylor, that statute provides for adoption of procedures for appointment of counsel subject to certain requirements—first among them is "that any procedure 'shall authorize *only the judges* of the county courts, statutory county courts, and district courts trying criminal cases in each county, or the judges' designees, to appoint counsel for indigent defendants in the county.'" *Id*. (quoting Article 26.04(b)(1) with emphasis added by Taylor).

Finally, Taylor recognizes an Emergency Order of the Supreme Court of Texas, which applied directly to individuals arrested under Operation Lone Star. *Id*. Among other things, the Emergency Order, which this Court took judicial notice of in its prior order, modified Articles 15.17(a) and 26.04(b), (c), and (h) "to authorize a magistrate to appoint counsel for an indigent defendant upon request at a proceeding under Article 15.17." *See* ECF No. 59-2 ¶ 2b. The Emergency Order also modified Article 26.04(a) to authorize the Texas Indigent Defense Commission ("TIDC") "to approve procedures for appointing counsel that differ from an affected county's procedures." *Id*. ¶ 2a. The Order further waived several requirements of Article 26.04 restricting how and from where counsel might be appointed and authorized the Executive Director of the TIDC to take on the county's role in developing appointment procedures." *Id*. ¶¶ 2a, 2c–2i. This latter authorization modified Article 26.047 "to authorize TIDC as an additional entity permitted to appoint an existing governmental entity, nonprofit corporation, or bar association operating as a managed assigned counsel program to appoint counsel." *Id*. ¶ 2h.

Relying on these statutory provisions and taking Plaintiff's allegations as true, Taylor

5

argues that Texas law makes clear that at the moment the magistrate determined that Plaintiff was indigent and entitled to appointment of counsel, one of two things is required: (1) counsel is immediately appointed or (2) "a form requesting such appointment is transmitted to the appropriate authority within 24 hours." Mot. at 9 (citing Tex. Code Crim. Proc. art. 15.17(a)). And Taylor concludes that both paths are within "the exclusive ministerial duty of the magistrate." *Id*.

Other statutory provisions are also relevant to this case. For instance, Texas law permits appointment of "a governmental entity, nonprofit corporation, or bar association to operate a managed assigned counsel program." Tex. Code Crim. Proc. art. 26.047(b). Texas law further provides: "In a county in which a managed assigned counsel program is operated in accordance with Article 26.047, the managed assigned counsel program may appoint counsel to represent the defendant in accordance with the guidelines established for the program." Tex. Code Crim. Proc. art. 26.04(f-1). As already noted, furthermore, individuals arrested under Operation Lone Star are subject to a unique appointment system implemented by the TIDC. *See* ECF No. 59-2 (Emergency Order of the Supreme Court of Texas). Importantly, the Emergency Order modified Article 26.04(a) to permit approval of different procedures for appointing counsel. *Id*. ¶ 2a. Plaintiff alleges that appointment of counsel in this case is through such a managed assigned counsel program and, that under this program, Taylor was delegated the responsibility to transmit necessary appointment papers to Lubbock Private Defenders' Office ("LPDO"). Second Am. Compl. ("SAC") ¶¶ 33–34.

Taylor argues that Article 26.04(f-1) provides for discretion as to appointment of counsel. Reply at 2. That argument, however, does not advance the issue because the allegation against Taylor is that he failed to transmit necessary appointment papers after the magistrate had found Plaintiff entitled to appointment of counsel. Any discretion within Article 26.04(f-1) does not relate to the alleged duty of Taylor to transmit appointment paperwork.

Taylor next argues that Article 26.04(f-1) is immaterial because none of it relates to jailers like him. Reply at 2. He contends that LPDO is the managed assigned counsel program which has

6

a discretionary duty to make appointment of counsel and that the managed assigned counsel process delegates no responsibilities to him. *Id*. But he ignores the language within Article 26.04(f-1) that permits appointment of counsel "in accordance with the guidelines established for the program." Plaintiff relies on this language to bolster his allegation that state law, through the managed assigned counsel program, delegated to Taylor the responsibility for transmitting appointment paperwork to LPDO. *See* Resp. at 8.

Given the modifications to the Texas procedures set out in the Emergency Order as well as the fact that procedures for appointment of counsel can also arise through managed assigned counsel programs operated in accordance with Article 26.047, Taylor's conclusion that he had no duty to transmit appointment paperwork is not nearly so clear as Taylor presents. One matter does appear clear—the duty to transmit the appointment paperwork is not within the discretionary authority of whomever has such duty. Thus, for purposes of this motion, the Court views the duty as mandatory, not discretionary. And, if Taylor had a mandatory duty to transmit appointment papers, his failure to do so would be outside the scope of any discretionary authority bestowed upon him through Operation Lone Star.

As a factual matter, Taylor has not convinced this Court that no such duty was delegated to him during Operation Lone Star. His argument may have more merit if the detainees had proceeded through the normal criminal process. But, as Taylor recognizes, Operation Lone Star implemented various modifications to the normal procedure. Reliance on the normal criminal process is thus unwarranted and ill-advised. Reliance on the normal process when a different process allegedly applies does not carry Taylor's burden.

Although Taylor recognizes the modifications to the procedures resulting from Operation Lone Star, he simply dismisses Plaintiff's allegation that appointment of counsel in this case was through a managed assigned counsel program that delegated to Taylor the responsibility to transmit necessary appointment papers to LPDO. Notably, Article 26.04(f-1) permits such programs to

7

appoint counsel "in accordance with the guidelines established for the program." Taylor does not provide any guidelines established for the managed assigned counsel program in place under Operation Lone Star. Such guidelines may provide an avenue for imposing on Taylor the duty to transmit appointment paperwork. Nor does Taylor provide anything about his duties or the scope of his duties to facilitate a determination of whether the transmittal duty had been delegated to him.

Because special procedures were put into place during Operation Lone Star, the Court cannot simply dismiss or disregard Plaintiff's allegation that the transmittal duty was delegated to Taylor. While it may ultimately come to light that Taylor indeed had no such delegated duty, resolving this matter on a Rule 12(b)(6) motion on the information now before the Court exceeds the permissible bounds of such a motion. Plaintiff complains of Taylor's failure to transmit necessary paperwork so that counsel could be appointed. Taylor essentially makes no effort to show that he had any discretion to not transmit necessary paperwork or that his duties under Operation Lone Star did not include the duty to transmit the paperwork. His reliance on the procedural scheme is insufficient to carry his burden for the reasons stated.

In reply, Taylor argues that, even if Plaintiff's allegation is true that he was delegated the duty to transmit appointment paperwork, "Texas law is clear that statutorily authorized procedural devices such as managed assigned counsel programs cannot modify or abrogate statutes that provide for substantive rights." Reply at 4. He contends that statutes authorizing a managed assigned counsel program cannot "abrogate the statutory process of appointing counsel by alternately vesting authority for such matters with anyone but magistrates, their Article 26.04 designees, or 'a governmental entity, nonprofit corporation, or bar association under a written agreement' with the county." *Id*. at 4–5 (citing Tex. Code Crim. Proc. arts. 15.17(a), 26.04(f-1), and 26.047(a)(2)). This contention again seems to ignore the language in Article 26.04(f-1) that permits appointment of counsel "in accordance with the guidelines established for the program." But the Court need not

8

definitively resolve this argument, because "[a]rguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).

Taylor contends that the only relevant allegation by Plaintiff relates to a magistrate finding him entitled to appointment of counsel. But this contention is at least partially based on the rejected argument that state law places responsibility for appointment of counsel on the magistrate in the special circumstances of this case. Again, Taylor ignores other allegations of Plaintiff, such as Taylor, as an operator of the processing center, had responsibility for sending appointment paperwork, *see* SAC ¶ 34. As previously noted by this Court: "Under the facts alleged by Plaintiff, once the magistrate found Plaintiff entitled to appointment of counsel at his initial appearance, Taylor had no discretion but to send the necessary paperwork for appointment of counsel. Such action appears purely ministerial in character." *Castelan*, 2025 WL 424538, at *21.

Taylor quarrels that Plaintiff relies on mere allegations. *See* Reply at 2 ("Plaintiff's response merely highlights the fact that there is nothing before the Court indicating any legal duty for Taylor to facilitate the appointment of counsel for Plaintiff aside from Plaintiff's unsubstantiated say-so."), 4 ("Plaintiff cites only his own pleadings in support of this contention."). But that is the nature of litigation at this juncture. This is so because "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Alvarado v. Tex. Health & Hum. Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2019 WL 6876499, at *6 (W.D. Tex. Dec. 17, 2019) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). "When parties seek dismissal under Rule 12(b)(6), they subject themselves to the pleading leniency of Rule 8(a), even with respect to a defense such as qualified immunity." *Alvarado v. Tex. Health & Hum. Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2020 WL 4677304, at *5 (W.D. Tex. Aug. 12, 2020). The Supreme Court has recognized that the qualified immunity analysis differs on summary judgment from a motion to dismiss because "the plaintiff can no longer rest on the pleadings, and the court looks to the

evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (citation omitted).

The Court has provided Taylor with an opportunity to carry his burden to establish that his challenged conduct, i.e., his failure to transmit appointment papers as alleged by Plaintiff, was within the scope of his discretionary authority. He could carry that burden by showing that he had no duty to act at all or that his duty to act was not ministerial. *See Cherry Knoll*, 922 F.3d at 318 ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity."). "Action taken outside an official's discretionary authority is ministerial." *Parker v. Armstrong*, No. 6:22-CV-00413-ADA, 2024 WL 3730657, at *4 (W.D. Tex. Aug. 7, 2024) (citing *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999)). And determining whether "an action is a discretionary duty or ministerial act involves an analysis of the policy guiding the governmental employee." *Id*. The Fifth Circuit, furthermore, recognizes that "an omission is an act." *Aldy v. Valmet Paper Mach.*, 74 F.3d 72, 76 (5th Cir. 1996). Despite the opportunity provided to him, Taylor still fails to carry his burden.

In denying the prior motion to dismiss without prejudice, the Court noted: "If Taylor must rely on evidence not properly considered under Rule 12(b)(6), the better course is to pursue the defense on summary judgment." *Castelan*, 2025 WL 424538, at *22. This is an efficient and practical means to address factual matters that require resort to matters outside the pleadings. Nevertheless, to dispel the alleged delegation of the duty to transmit appointment paperwork, Taylor could have provided the applicable guidelines. Or he might have provided documentation as to the authority vested to him under Operation Lone Star. But he provides nothing to support the contention that he had no responsibility for transmitting the appointment paperwork to LPDO. He does not provide any guidelines or any written terms setting out his duties and responsibilities. He does not provide any sworn affidavit or declaration affirmatively stating that he has no duty to transmit appointment paperwork. In general, submission of such documentation appears better suited to

summary judgment. But the Court may consider certain submitted documents, such as documents subject to judicial notice, on a Rule 12(b)(6) motion, without converting the motion to one for summary judgment.

While Taylor disagrees with the Plaintiff's factual allegations, a Rule 12(b)(6) motion provides him no leeway to simply disagree. On summary judgment, Taylor can contest that it was his duty to transmit the necessary paperwork through declaration, affidavit, deposition testimony, or any other documentation permitted through the summary judgment process. Because Taylor moves to dismiss under Fed. R. Civ. P. 12(b)(6), he is limited to the restrictions of such procedure. He cannot complain that Plaintiff relies on mere allegations when he presented the qualified immunity issue through a motion to dismiss. At this juncture, the proper course is to proceed to summary judgment.

Because Taylor has not carried his initial burden with respect to qualified immunity, the Court **DENIES** the Renewed Motion to Dismiss (ECF No. 76). Taylor's failure to carry his burden eliminates any need to reach the qualified-immunity framework. In accordance with Fed. R. Civ. P. 12(a)(4), Defendant Ronny Taylor shall file his responsive pleading to Plaintiff's Second Amended Complaint **on or before August 28, 2025**.

**IT is so ORDERED this 14th day of August 2025.**

*/s/ Jason Pulliam*
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**